# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JEWEL WESLEY GIST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-12-1208-HE** |
| | ) | |
| **RONALD A. ANDERSON et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

The Plaintiff, Mr. Jewel Wesley Gist, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his federal constitutional rights. Defendants include Diana Jones and Tim Wilkinson, who are or were employees of Corrections Corporation of America (the "CCA Defendants"), and Justin Jones, Ronald A. Anderson, and Alan Cooper, who are or were employees of the Oklahoma Department of Corrections (the "ODOC Defendants"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Having reviewed Mr. Gist's Complaint (Doc. No. 1) and Amended Complaint (Doc. No. 38-1),[1] the undersigned recommends that Mr. Gist's claims be DISMISSED

---

[1] Mr. Gist has filed a Motion for Leave to File an Amended Complaint (Doc. No. 38) and attached to that motion the proposed pleading (Doc. No. 38-1) (the "Amended Complaint"). By separate order entered contemporaneously herewith, the Court has granted the motion and directed that the Amended Complaint be filed. Because the Amended Complaint supplements rather than replaces the Complaint, the undersigned has considered the allegations made in both documents.

WITH PREJUDICE for failure to state a claim on which relief may be granted. The undersigned further recommends that the CCA Defendants' Motion to Dismiss (Doc. No. 24) and the ODOC Defendants' Motion to Dismiss (Doc. No. 27) be GRANTED insofar as the relief requested, consistent with the analysis set forth below.

## SUMMARY OF PLEADINGS

In his pleadings, Mr. Gist acknowledges that as part of a criminal conviction in the District Court of Creek County, Oklahoma, he was ordered to pay Creek County costs and fines assessed against him. Am. Compl., Doc. No. 38-1, at 4-5.[2] While incarcerated at Davis Correctional Facility in Holdenville, Oklahoma, Mr. Gist was a party to an out-of-court settlement of a personal injury civil lawsuit stemming from an automobile accident that had occurred prior to his conviction. *See* Compl., Doc. No. 1, at 2-5. In February 2012, Mr. Gist notified prison officials that he would be receiving funds from the settlement. *Id*. at 5, ¶ 17. In April 2012, $2,712.27 in proceeds from the settlement were mailed to CCA, which operates Davis Correctional Facility, for deposit into Mr. Gist's prison trust account. *See id.* at 5, ¶¶ 15-16.

---

[2] The undersigned, in evaluating the sufficiency of Mr. Gist's pleadings, may consider the state court order assessing fees and costs against Mr. Gist because it is (1) a document relied on by Mr. Gist in his pleadings that is central to his claim and of undisputed authenticity, and (2) a judicially noticeable public record. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (detailing documents the court can consider in evaluating sufficiency of complaint). In his Complaint and Amended Complaint, Mr. Gist refers to and quotes from the state court order. Although Mr. Gist did not attach a copy of the order to either pleading, he did file a copy as an exhibit in response to a motion to dismiss filed by three Defendants. Pl.'s Resp. Ex. 1, Doc. No. 44-1, at 2-4.

Pursuant to prison policy,[3] these funds initially were placed on hold. *Id*. at 5, ¶ 18. Defendant Ronald A. Anderson of the ODOC General Counsel's Office notified Mr. Gist in writing of the hold and stated that the funds could be subject to Title 57, Section 566.1 of the Oklahoma Statutes, which – as discussed below – provides that settlement funds payable to a prisoner shall be redirected to satisfy certain liquidated debts of the prisoner. *Id*. at 5, ¶ 18.[4] Between approximately May 1, 2012 and June 10, 2012, Mr. Gist "mailed [t]raverse responses to Defendants Ronald A. Anderson and Justin Jones contesting the deprivation, seizure and impending disbursement of his settlement proceeds pursuant to said statute," asserting that these documents placed Defendants on notice of "possible constitutional violations." Compl. at 6, ¶ 20; *id.* at 9, ¶ 33. Mr. Gist was not provided a formal hearing where he could "present facts, call witnesses, submit evidence, present [argument] and authorities in defense of himself and his money, a protected liberty interest." *Id*. at 6, ¶ 20. On July 10, 2012, Mr. Anderson sent Mr. Gist a letter notifying

_____

[3] The undersigned, in evaluating the sufficiency of Mr. Gist's pleadings, may consider ODOC Fiscal Management Policy OP-120230 because it is (1) a document relied on by Mr. Gist in his pleadings that is central to his claim and of undisputed authenticity, (2) a judicially noticeable public record, and (3) a policy document described in the *Martinez* report by Defendants in a manner undisputed by Mr. Gist. *Gee*, 627 F.3d at 1186. Mr. Gist refers to the policy in his Complaint and Amended Complaint and attached one page of it to his Complaint. Compl. Ex. 1, Doc. 38-1, at 2. Mr. Gist was advised of his opportunity to dispute materials in the *Martinez* report. Order, Doc. No. 30, at 1. He did not contest Defendants' description of OP-120230. *See* Mot. to Strike, Doc. No. 33; Br. in Support of Mot. to Strike, Doc. No. 34; Objections, Doc. No. 39.

[4] The undersigned may consider this letter because it is a document relied on by Mr. Gist in his pleadings that is central to his claim and of undisputed authenticity. *Gee*, 627 F.3d at 1186. In his Complaint, Mr. Gist refers to a letter he received from Mr. Anderson, and he filed a copy of this letter, dated May 11, 2012, as an exhibit in response to three Defendants' motion to dismiss. Pl.'s Resp. Ex. 4, Doc. No. 44-4, at 2.

him that he had determined that the funds were subject to Section 566.1 and they were being disbursed in accordance with the statute on that date. *Id.* at 6, ¶ 21.[5]

Mr. Gist does not directly challenge the constitutionality of either the prison policy or the state statute; he challenges the constitutionality of their specific application to him.[6] Aside from vaguely alleging that his criminal case is "still being litigated," Mr. Gist does not dispute that he owes a debt to Creek County. Compl. at 9.[7] Further, he

---

[5] Mr. Gist attached the letter as an exhibit to his Complaint, *see* Compl. Ex. 1, Doc. No. 1-1, at 7, and thus it may be considered as part of that pleading. *See* Fed. R. Civ. P. 10(c); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). In the letter, Mr. Anderson states that he received Mr. Gist's "letter" and indicates that Mr. Gist "provided no proof that [Okla. Stat. tit. 57, § 566.1] does not apply or that [Mr. Gist] ha[d] no debts." *See* Compl. Ex. 1, at 7.

[6] In a brief Mr. Gist filed in response to three Defendants' motion to dismiss, Mr. Gist asserts that the state statute unconstitutionally discriminates between prisoners who receive settlement funds and prisoners who receive funds from other sources. Pl.'s Br. in Resp., Doc. No. 45, at 26-27. Mr. Gist did not raise this argument in his Complaint, and, thus, the Court need not consider it. Nevertheless, the undersigned notes that the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution

> permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. . . . State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961). This standard of review applies unless a fundamental right or suspect classification is involved, which has not been alleged here. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973); *see also Nelson v. Nelson*, 954 P.2d 1219, 1223-24 (Okla. 1998) (noting application of same standard pursuant to Oklahoma Constitution).

[7] The Oklahoma Court of Criminal Appeals has denied Mr. Gist relief on his most recent appeal, in which he challenged, among other things, his suspended sentence and a partial revocation of that suspended sentence. *See Gist v. State*, No. RE-2011-489 (Okla. Crim. App. Mar. 14, 2013). Mr. Gist has raised a similar challenge through a petition for a writ of habeas corpus in the United States District Court for the Northern District of Oklahoma, which remains pending. *See Gist v. Wilkinson*, Case No. 13-CV-083-JED-

does not dispute that the funds were applied in partial payment of that debt.  *See id.* at 6, ¶¶ 21-22.

Mr. Gist contends, instead, that the settlement funds should not have been placed on hold or disbursed pursuant to statute because payments toward the Creek County debt were not due until after his release from prison.  *Id.* at 8, ¶ 29.  Mr. Gist quotes the state court order assessing fines and costs as saying that "[a]ll fines, costs, and assessments are due and owing from the date of sentencing and must be paid in full within six (6) months [after his] release from incarceration."  *Id*. at 4.  Mr. Gist argues that this language should be read to mean that no money need be paid until six months after his release.  *Id.* at 4, 10-12.[8]

Based on his interpretation that the debt was not yet payable, Mr. Gist then argues that Defendants' actions in accordance with the prison policy and state statute: (1) deprived him of a protected property interest without due process of law in violation of the Fourteenth Amendment; (2) resulted in an unreasonable seizure in violation of the Fourth Amendment; (3) denied him equal protection of the laws in violation of the

---

TLW (N.D. Okla. filed Feb. 8, 2013).  In the instant proceeding, Mr. Gist appears to accept the basic fact that he owes a debt to Creek County.  Regardless, a 42 U.S.C. § 1983 federal lawsuit is not a proper vehicle for an ancillary challenge to a state court order entered as part of a state court conviction.

[8] The full language in the state court order is that "[a]ll fines, costs and assessments are due and owing from the date of sentencing and must be paid in full within six months after [Mr. Gist's] release from incarceration, or [Mr. Gist] must reappear in this Court for further proceedings."  Pl.'s Resp. Ex. 1, Doc. No. 44-1, at 4.  This provision plainly made the debt to Creek County due immediately upon Mr. Gist's sentencing, not six months after his release.

Fourteenth Amendment; (4) violated his right to access the courts pursuant to the First Amendment; (5) exhibited deliberate indifference to his rights; and (6) constituted an illegal modification of a state court order, thereby interfering with a contract between Mr. Gist and the State of Oklahoma. Compl. at 6-9. As detailed in the subsequent analysis, each of these assertions should be dismissed for failure to state a claim on which relief can be granted.

ANALYSIS

A. *Screening Requirement*

The Court must dismiss an action brought *in forma pauperis* if, at any time, the Court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Such dismissal must be ordered regardless of whether a filing fee or any portion thereof has been paid. *Id.*

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Moreover, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts sufficient to demonstrate each defendant caused a deprivation of a specific federal right while acting under color of state law. 42 U.S.C. § 1983; *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  The Court's analysis for failure to state a claim is the same regardless of whether it is performed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) or pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (applying Rule 12(b)(6) standard for purpose of § 1915(e)(2)(B)(ii) determination).  In its analysis, the Court construes a pro se litigant's pleadings liberally but does not assume an advocacy role on behalf of the litigant.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Pro se litigants are required to adhere to procedural rules that govern other litigants.  *Kay*, 500 F.3d at 1218.

> **B.** *Whether Plaintiff has stated a claim for violation of his Fourteenth Amendment right to due process*

Mr. Gist contends that Defendants, acting pursuant to prison policy and state law, deprived him of personal injury settlement funds in his prison trust account without a predeprivation hearing, thereby violating his right to procedural due process under the Fourteenth Amendment.  Compl. at 4-8.  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a claim for deprivation of property without due process, a plaintiff must establish: (1) the existence of a protected property interest, followed by a deprivation of that interest; and (2) that the process provided was inadequate under the Fourteenth Amendment.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006); *Farthing v.*

*City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). Here, the facts as alleged by Mr. Gist do not support either element.

### 1. Existence of a Protected Property Interest

A prisoner does not automatically have a protected property interest in money that has been or is intended to be deposited into his or her prison trust account. *Steffey*, 461 F.3d at 1221-23; *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010). Property interests do not arise from the Constitution but instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Then, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Roth*, 408 U.S. at 577).

This analysis, when applied in the context of prisoner due process claims, must take into consideration legitimate state restrictions of prisoner rights. Although prisoners do not lose all constitutional protections, their rights and privileges properly may be restricted so long as the restrictions are rationally related to a legitimate penological interest. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979); *Steffey*, 461 F.3d at 1222. In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that there is a deprivation of a prisoner's protected liberty interest if the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." The Tenth Circuit has recognized that *Sandin*'s "atypical and significant hardship" test extends to claims of a deprivation of a

prisoner's protected property interest. *Clark*, 625 F.3d at 691 (holding that whether a prisoner has a protected property interest in funds in prison trust account, such that freezing account in response to garnishment summons would require due process, must be analyzed under *Sandin*'s atypical and significant hardship test); *Steffey*, 461 F.3d at 1221-23 (holding that prisoner did not have protected property interest in money order sent to him by another prisoner's mother); *Cosco v. Uphoff*, 195 F.3d 1221, 1223 (10th Cir. 1999) (holding that *Sandin* applies to claims of deprivation of rights to keep personal property in prisoners' cells and to receive income from hobbies).

Accordingly, to establish that he has a protected property interest in the settlement funds sent for deposit into his prison trust account, Mr. Gist would have to establish that Defendants' actions – including placing such funds on hold and disbursing them to Creek County – imposed an "'atypical and significant hardship'" beyond "'the ordinary incidents of prison life.'" *Steffey*, 461 F.3d at 1221 (quoting *Sandin*, 515 U.S. at 484). In its analysis of whether a protected property interest exists, the Court focuses on "'the nature of the deprivation,'" not "'the language of a particular regulation.'" *Cosco*, 195 F.3d at 1223 (quoting *Sandin*, 515 U.S. at 481).

Mr. Gist's allegations and the documents discussed above establish that the Defendants acted in accordance with ODOC Fiscal Management Policy OP-120230 and Okla. Stat. tit. 57, § 566.1 in connection with the treatment of the settlement funds sent to Mr. Gist. Thus, the nature of Mr. Gist's alleged deprivation is largely defined by those provisions.

OP-120230 is a policy promulgated by ODOC to facilitate implementation of §566.1.[9] The policy provides that settlement funds received by a prisoner "will be immediately encumbered for up to 180 days to allow time for the [ODOC] General Counsel's Office to define an offender obligation distribution plan in accordance with state law." Compl. Ex. 1, Doc. No. 1-1, at 2; *see also* Special Report, Doc. No. 23, at 5.

Section 566.1 provides that when a prisoner enters into a settlement agreement arising from a tort or contract claim, the settlement funds first must be used to satisfy specific liquidated debts, including "[a]ny previous assessments of court costs or fines involving the criminal convictions of the offender." Okla. Stat. tit. 57, § 566.1(A), (C). Pursuant to § 566.1, any such settlement funds shall be deposited with the ODOC or a political subdivision for disbursement to be made in accordance with the statute. *Id*. § 566.1(C).[10] Only after the requisite statutory distributions have been made should any remaining settlement funds be deposited in the prisoner's trust account. *Id.*[11]

---

[9] Here, Mr. Gist does not challenge the validity of OP-120230, but if he were to do so he would bear the burden of disproving its validity. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (holding burden on prisoner to disprove validity of prison regulation, not on state to prove validity).

[10] "It shall be the duty of the attorney of the inmate or the inmate, if acting pro se, to notify the defendant [in the action being settled] that any settlement shall be deposited with the Department [of Corrections] or political subdivision for disbursement in accordance with this section." Okla. Stat. tit. 57, § 566.1(C).

[11] Indeed, after disbursement in accordance with the statute,

> the state, the Department of Corrections, any other state agency, or any political subdivision of the state shall have the first right of subrogation to any such award or settlement for costs of services incurred by the state, state agency, or political subdivision in relation to such claim, for service provided to the inmate at the request of the inmate, and for all costs of

The effect of § 566.1 is to deny a state prisoner an interest in settlement funds until *after* statutorily specified debts have been satisfied. Because, at the time of the decisions to place the funds on hold and to disburse them to Creek County, Mr. Gist did not yet have an unencumbered right to the settlement funds, those decisions did not impose on him an atypical and significant hardship beyond the ordinary incidents of prison life. Indeed, because the amount of his debts exceeded the amount of the settlement funds, Mr. Gist never acquired full right to any settlement funds. Accordingly, as a matter of law, his allegations are insufficient to establish that he had a property interest in those funds that was protected by the Fourteenth Amendment.

## 2. Adequate Process

Even if Mr. Gist could establish a protected property interest in the settlement funds, his factual allegations fall short of establishing that the process he received was inadequate. Absent compelling circumstances, a prisoner who may be deprived of a protected property interest "pursuant to an affirmatively established or de facto policy, procedure, or custom" is entitled to a hearing prior to the deprivation. *Gillihan v. Shillinger*, 872 F.2d 935, 939-40 (10th Cir. 1989), *abrogated on other grounds by Clark*, 625 F.3d 686. The procedures required for such a predeprivation hearing are determined

---

incarceration, *before any part of the award is placed in the trust account of the inmate*.

Okla. Stat. tit. 57, § 566.1(C) (emphasis added). Then, "[a]fter disbursement of the funds by the state or the Department of Corrections, twenty percent (20%) of the award shall be placed in the offender's mandatory savings account and the remainder shall be placed in the offender's regular draw account." *Id.* § 566.1(B).

based on a balancing test that considers the plaintiff's and the state's competing interests vis-à-vis (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 940 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Fundamentally, due process is satisfied by the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation marks omitted).

Applying the balancing test set forth in *Gillihan*, the procedures described in Mr. Gist's allegations and the referenced documents were adequate to provide Mr. Gist the process to which he was entitled. First, as for Mr. Gist's private interest in the funds, Mr. Gist details how he would have spent the funds if he had received them. *See* Compl. at 12. However, his right to the funds was limited if not entirely eliminated by § 566.1's superseding requirement that any such funds first be used to satisfy certain debts.

As for the procedures that were used, Mr. Gist's allegations and the referenced documents establish that (1) Mr. Gist notified prison officials that he would be receiving funds from a settlement of a personal injury claim; (2) prison officials, pursuant to OP-120230, placed the settlement funds on hold upon their receipt; (3) Mr. Gist was notified of the hold by the ODOC General Counsel's Office; (4) Mr. Gist was permitted to present in writing exhibits and argument as to why the settlement funds were not subject to § 566.1; (5) the ODOC General Counsel's Office determined that Mr. Gist owed costs and

fines to Creek County stemming from a criminal conviction and that compliance with §566.1 required the disbursement of the settlement funds to Creek County; (6) the settlement funds were disbursed in their entirety to Creek County; and (7) Mr. Gist was notified of the decision and the disbursement. The undersigned concludes that these procedures did not present an undue risk of an erroneous deprivation.

Nor would the additional or substitute procedural safeguards suggested by Mr. Gist materially lessen any such risk. Mr. Gist contends that his consent was required prior to the disbursement of the funds but provides no reasonable argument for why that should be so. *See* Compl. at 7, ¶ 24. More to the point, Mr. Gist contends that he was entitled to and deprived of the opportunity to, among other things, call witnesses and submit evidence in a formal proceeding. *See id*. at 6-7, ¶¶ 20, 26. However, a "hearing" for Fourteenth Amendment purposes does not necessarily require a live proceeding that approximates a judicial trial. *Mathews*, 424 U.S. at 333-35. At issue in the subject inquiry was not whether Mr. Gist should be assessed costs and fines payable to Creek County—that decision was made as part of his criminal sentencing, and the ODOC was entitled to rely on it. Rather, the subject inquiry concerned only the application of § 566.1 upon Mr. Gist's receipt of funds, which he acknowledged to be from a personal injury settlement. Mr. Gist was notified that the settlement funds could be subject to § 566.1 and was permitted to present, via written exchange, argument and documents on that point. Mr. Gist alleges no facts to suggest that this hearing was not at a meaningful time or in a meaningful manner or that a formal proceeding in the nature of a trial could have led to a different result.

Thus, even assuming for the sake of argument that Mr. Gist had a protected property interest in the settlement funds, he has failed to allege sufficient facts to establish that the process he received was inadequate under the Fourteenth Amendment. Accordingly, having failed to establish the elements of a Fourteenth Amendment claim, Mr. Gist's § 1983 claims pertaining to procedural due process under the Fourteenth Amendment should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

C. *Whether Plaintiff has stated a claim for violation of his Fourth Amendment right to be free from unreasonable seizure of property*

Mr. Gist also contends that Defendants seized his property in violation of his right to be free from unreasonable seizures pursuant to the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To establish a Fourth Amendment violation, a plaintiff must first establish that a seizure has occurred, i.e. that there has been a "meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Assuming a seizure has occurred, a plaintiff must then establish that the seizure was unreasonable. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61-62 (1992).

As detailed above, Mr. Gist had no automatic property interest in the settlement funds, as they were subject to a statutory disbursement scheme that gave priority to payment of Mr. Gist's debts. Okla. Stat. tit. 57, § 566.1(A), (C). Indeed, Mr. Gist never had full possession of the funds. Technical compliance with this statute required such

funds to be deposited with the ODOC or a political subdivision for disbursement to be made in accordance with the statute. *Id.* § 566.1(C). Here, upon the prison's receipt of the funds, they were deposited into Mr. Gist's prison account but, pursuant to OP-120230, at all times were subject to a hold. *See* Compl. Ex. 1, Doc. No. 1-1, at 2; Special Report, Doc. No. 23, at 5. Mr. Gist at no time had the right to use or enjoy the funds.

Regardless, even if Mr. Gist could establish a possessory interest in the funds, there was no meaningful interference with his interest because, pursuant to § 566.1, the funds were obligated to be directed immediately for payment of specified debts. Moreover, even assuming for the purposes of a Fourth Amendment analysis that Mr. Gist's factual allegations could establish that a "seizure" occurred, they do not establish that Defendants' actions were unreasonable. Defendants acted in compliance with prison policy and state law in holding and disbursing the settlement funds.

In short, Mr. Gist's allegations are insufficient to establish the elements of a Fourth Amendment violation – that is, a meaningful, unreasonable interference with a possessory property interest. Mr. Gist's § 1983 claims alleging an unreasonable seizure in violation of the Fourth Amendment should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

    *D. Whether Plaintiff has stated a claim for violation of his Fourteenth Amendment right to equal protection*

Mr. Gist alleges that Defendants' acts "constitute[d] a violation of Plaintiff[']s right to equal treatment and equal protection of the law secured in the Fourteenth Amendment." Compl. at 9, ¶ 33. The Fourteenth Amendment's Equal Protection Clause

generally requires like treatment among similarly situated persons. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It also limits a state's ability to burden a fundamental right or to target a suspect class. *See Romer v. Evans*, 517 U.S. 620, 631 (1996).

In support of his allegation, Mr. Gist simply states that "other inmates who owe costs and fines are not being subjected to the same scrutiny as the Plaintiff and his settlement proceeds when they receive monies from inheritances, sales of personal property and money sent from home etc." Compl. at 9, ¶ 33. To the extent that Mr. Gist is alleging that Defendants' actions resulted in an unequal application of the law, his statements fall short of alleging an equal protection violation because he does not allege that these "other inmates" are similarly situated to him due to having received funds from a settlement agreement. Instead, Mr. Gist describes inmates who received funds from outside sources other than settlement agreements and therefore would not be subject to § 566.1. Even if that were not so, Mr. Gist's allegations do not suggest that Defendants' actions impermissibly burdened a fundamental interest or targeted a suspect class, nor does Mr. Gist allege that he is a member of a suspect class.

Mr. Gist has not alleged sufficient facts to establish a violation of his right to equal protection under the Fourteenth Amendment and, therefore, has failed to state a claim on which relief may be granted. Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Mr. Gist's § 1983 claims pertaining to the Fourteenth Amendment's Equal Protection Clause should be dismissed.

*E. Whether Plaintiff has stated a claim for violation of a constitutional right to access the courts*

Mr. Gist alleges that Defendants' actions violated his right to access the courts. Compl. at 8-9, ¶¶ 30, 32-33. In general, to state such a claim, a plaintiff must first allege facts to establish a non-frivolous underlying cause of action that he or she was prevented from pursuing based on the defendant's actions. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

In his Complaint, Mr. Gist alleges no such facts but, instead, simply concludes that his right of access to the courts was violated. In his Amended Complaint, Mr. Gist adds that his criminal case was being appealed, but does not connect that allegation to any denial of access to the courts. Am. Compl. at 13, ¶ 8. Bare legal conclusions in a complaint are not entitled to the assumption of truth and cannot sufficiently state a claim for relief without factual support. *Iqbal*, 556 U.S. at 679. Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Mr. Gist's § 1983 claims pertaining to a right of access to the courts should be dismissed for failure to state a claim on which relief may be granted.[12]

---

[12] Mr. Gist also attempts to assert claims under 42 U.S.C. § 1983 for "deliberate indifference" to violations of his constitutional rights (Compl. at 9, ¶ 33), and interference with a contract by means of violating and impermissibly modifying the state court order assessing fees and costs against him (*id*. at 8, ¶ 29). Neither attempt warrants long discussion. With respect to the deliberate indifference claim, the undersigned has found that Mr. Gist's allegations do not establish a violation of any constitutional right; therefore – among other difficulties with the asserted claim – there could be no deliberate indifference to the violation of a constitutional right. With respect to the interference with contract claim, a court order is not a contract, and, in any event, Mr. Gist's allegations do not establish that the Defendants' actions were unreasonable or otherwise improper. These claims should be dismissed for failure to state a claim on which relief may be granted.

*F. Whether the Court has jurisdiction to hear Plaintiff's official-capacity claim against Defendant Justin Jones in light of the assertion of Eleventh Amendment immunity*

In a motion to dismiss, Defendant Justin Jones asserts he is immune from suit in his official capacity pursuant to the Eleventh Amendment of the United States Constitution. ODOC Defs.' Mot. to Dismiss, Doc. No. 27, at 5-6. An assertion of Eleventh Amendment immunity is a challenge to the Court's subject matter jurisdiction and is properly raised through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Although the undersigned recommends dismissal of all claims based on the merits pursuant to 28 U.S.C. § 1915(e)(2)(B), Eleventh Amendment immunity presents a jurisdictional bar and should be addressed. *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558 (10th Cir. 2000).

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim against a U.S. state unless the state consents. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity extends beyond states to state agencies and to state officials sued in an official capacity for money damages. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (noting official-capacity claim against state official for money damages equates to action against state itself). Therefore, official-capacity claims for money damages must be dismissed as outside the federal courts' jurisdiction unless sovereign immunity is waived. *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 632 (10th Cir. 1998); *Fent*, 235 F.3d at 558-59.

"Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citing *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994)). Because Defendant Jones was the Director of the ODOC at the time of the events that form the basis of Plaintiff's claim against him, the agency's immunity extends to him. *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988); Okla. Stat. tit. 57, §§ 504, 505, 507; *see also Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988) (applying Eleventh Amendment immunity analysis to other Oklahoma state agencies), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013).

Here, Mr. Gist seeks both money damages and, arguably, prospective injunctive relief. *See* Compl. at 11-12; Am. Compl. at 17-18.[13] As noted, Eleventh Amendment immunity precludes the former type of claim, but it does not preclude an official-capacity claim against a state official for prospective injunctive relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Accordingly, separate from the recommendations on the merits of Mr. Gist's claims discussed above, the undersigned recommends that Mr. Gist's official-capacity claims against Mr. Jones be dismissed for lack of subject matter

---

[13] There is a significant question as to whether the injunctive relief described by Mr. Gist in his Complaint and Amended Complaint would entail anything other than an award of the settlement funds. For the purposes of this Report and Recommendation, the undersigned assumes without deciding that Mr. Gist also is requesting prospective injunctive relief.

jurisdiction to the extent that such claims seek recovery of money damages.[14]  To the

extent that such claims seek injunctive relief, they would not be *independently* subject to

dismissal for lack of subject matter jurisdiction; however, the undersigned's

recommendations that the claims be dismissed for failure to state a claim on which relief

may be granted would still apply.[15]

RECOMMENDATION

For the foregoing reasons, the undersigned recommends as follows:

1. That Plaintiff's claims as stated in his Complaint and Amended Complaint be

   DISMISSED for failure to state a claim on which relief may be granted.

2. That such dismissal be WITH PREJUDICE because, based on the foregoing

   analysis, it would be futile for Mr. Gist to file a second amended complaint.

   *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).  Under

---

[14] Mr. Jones also contends that, in his official capacity, he is not a "person" for the purpose of 42 U.S.C. § 1983.  ODOC Defs.' Mot. to Dismiss, Doc. No. 27, at 5-6.  "[A]n entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983," and, accordingly, is "not subject to suit under § 1983 in either federal court or state court."  *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 365 (1990) (citing *Will*, 491 U.S. 58).  The recommendation above regarding the extent of Mr. Jones' Eleventh Amendment immunity would mean, by extension, that Mr. Gist's official-capacity claims against Defendant Jones seeking money damages should also be dismissed because Mr. Jones is not a "person" for the purpose of § 1983.

[15] Defendants Jones, Anderson, and Cooper assert Mr. Gist's individual-capacity claims against them should be dismissed under the doctrine of qualified immunity.  ODOC Defs.' Mot. to Dismiss, Doc. No. 27, at 7.  Further, all Defendants, with the exception of Mr. Anderson, assert that Mr. Gist's individual-capacity claims against them should be dismissed for failure to allege facts that would establish their personal participation in the alleged deprivation of a federal right.  CCA Defs.' Mot. to Dismiss, Doc. No. 24, at 2-5; ODOC Defs.' Mot. to Dismiss at 8-9.  In light of the undersigned's recommendations on the merits of Mr. Gist's claims, these assertions do not need to be addressed.

the basic facts of Mr. Gist's case, he cannot successfully allege a violation of his federal or constitutional rights as required to pursue a claim under 42 U.S.C. § 1983.

-and-

3. That the CCA Defendants' Motion to Dismiss (Doc. No. 24) and the ODOC Defendants' Motion to Dismiss (Doc. No. 27) be GRANTED insofar as the relief requested, as more fully set forth above.[16]

RIGHT TO OBJECT

The parties are advised of their rights to file an objection to this Report and Recommendation with the Clerk of this Court on or before the 2nd day of January, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both the factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[16] In Mr. Gist's Amended Complaint, he names one additional defendant, Angela Jackson. In light of the undersigned's recommendation that Mr. Gist cannot prevail on the facts he has alleged, it would be futile to require service on Ms. Jackson and, instead, the claims against her should also be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B) (providing court "at any time" shall dismiss complaint that does not state a claim); *Murray v. Oklahoma*, No. CIV-07-1404-C, 2008 WL 740338, at *9 n.7 (W.D. Okla. Mar. 17, 2008) (dismissing unserved defendants when "[i]t would serve no purpose for a plaintiff to complete service upon an unserved defendant, solely to allow dismissal with prejudice for failure to state a claim") (quoting *Bernegger v. Wash. Mut., F.A.*, No. 07-C-1028, 2008 WL 597811, at *2 (E.D. Wis. Mar. 3, 2008)).

ENTERED this 11th day of December, 2013.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE